## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JoBeth Kissinger, | : | Civil Action No. |
| **Plaintiff** | : | |
| | : | **Jury Trial Demanded** |
| **v.** | : | |
| | : | |
| The Mennonite Home, d/b/a | : | |
| Mennonite Home Communities, | : | |
| Dan Mortensen, and | : | |
| Kimberly Blessing, | : | |
| **Defendants** | : | |

## FEDERAL COMPLAINT

### INTRODUCTION

Plaintiff, JoBeth Kissinger, by and through her attorneys, TRIQUETRA LAW, brings this Complaint against Defendant Mennonite Home Communities ("Mennonite Home") because Mennonite Home unlawfully terminated Plaintiff's employment because of her disability and interfered with her rights to Family Medical Leave under the law.

This action is brought pursuant to Family Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA). Plaintiff brings this action against the individual Defendants, Dan Mortensen, and Kimberly Blessing for their individual violations of FMLA.

## JURISDICTION

1.     The jurisdiction of this Court over Counts One through Eight of this controversy is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this District Court has original jurisdiction of all civil actions arising under the laws of the United States.

2.     The federal law to be enforced in Counts I, II, III, IV, V, & VI is the Family and Medical Leave Act of 1993, 29 U.S.C. §  2601, et seq.

3.     The federal law to be enforced in Counts VII  & VIII is the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

4.     The jurisdiction of this Court over Counts IX and X of this controversy is based on supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

5.     The law to be enforced in Counts IX and X is the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et seq.*

## VENUE

6.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES AND AGENTS

7.     Plaintiff JoBeth Kissinger ("Ms. Kissinger", "Plaintiff" or "Plaintiff Kissinger") is an adult citizen of the Commonwealth of Pennsylvania who resides

in Lancaster County, Pennsylvania.

8.     Defendant Mennonite Home Communities ("Mennonite Home" or "Defendant Mennonite Home") is a retirement home community, operating Lancaster County.

9.     Defendant Dan Mortensen ("Defendant Mortensen") is an individual employer for the purposes of FMLA enforcement and resides Lancaster County, Pennsylvania.

10.    Defendant Kimberly Blessing ("Defendant Blessing") is an individual employer for the purposes of FMLA enforcement and resides Lancaster County, Pennsylvania.

11.    Mennonite Home headquarters and principal place of business is located at 1520 Harrisburg Pike, Lancaster, PA 17601.

12.    Dan Mortenson was the Vice President of Operations for Defendant and he was instrumental in terminating Plaintiff in violation of FMLA and the ADA.

13.    Kimberly Blessing was the  Vice President of Human Resources and Operational Development for Defendant and she was instrumental in terminating Plaintiff in violation of FMLA and the ADA.

14.    Defendant Mennonite Home is an employer within the meaning of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611(4)(A)(i); 29 C.F.R. § 825.104(a).

15.     Defendant Mennonite Home is an employer within the meaning of the Americans with Disabilities Act (ADA), 42. U.S.C. § 12111(5)(A).

16.     Defendant Mortensen is an employer within the meaning of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611(4)(A)(ii)(I).

17.     Defendant Blessing is an employer within the meaning of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611(4)(A)(ii)(I).

18.     Defendant Mennonite Home employed Plaintiff from approximately July 17, 2000 through August 3, 2017 ("Plaintiff's period of employment").

19.     Plaintiff worked at Defendant Mennonite Home at the Lancaster location, located in Lancaster County, Pennsylvania.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.     To exhaust claims under both state  law, Plaintiff had to file her Complaint within 180 days of her termination.

21.     Plaintiff was terminated on August 3, 2017.

22.     One Hundred and Eighty (180) days following August 3, 2017 is January 30, 2018.

23.     Plaintiff submitted her signed PHRC discrimination questionnaire on December 29, 2017.

24.     Pursuant to PHRC Regulations the verified discrimination questionnaire was accepted and filed as a Complaint and docketed PHRC No. 201702359.

25.     Plaintiff authorized dual her PHRC complaint to be dual filed with the EEOC, which was entered as EEOC No. 17F201960557.

## WILLFUL VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

26.     Plaintiff has three years to file a civil complaint against an FMLA employer for willful violations of the Plaintiff's rights under FMLA.

27.     A willful violation is where an employer either knew or showed reckless disregard for the matter of whether his or her conduct was prohibited by the FMLA.

28.     Defendant Dan Mortensen worked for 13 years at the University of Valley Forge in Phoenixville, most recently  as the Executive Vice President.

29.     Defendant Mortensen served in various Vice President roles including Student Life, Finance and Development at the University of Valley Forge.

30.     Defendant Mortensen supervised and managed facilities, housekeeping, laundry, marketing, residential living, and dining services at the University of Valley Forge.

31.     Given Defendant Mortensen's extensive supervisor and director level of experience, he knew or should have known that his conduct was in violation of the FMLA.

32.     Defendant Mortensen knew or should have known that the Plaintiff's absences from work were for FMLA-qualifying reason, yet it punished her for

those absences by placing her on a performance improvement plan related to attendance.

33. Defendant Mortensen knew or should have known that the Plaintiff's absences from work were for FMLA-qualifying reason, yet it punished her for those absences by terminating her.

34. Defendant Mortensen placed Plaintiff on the performance improvement plan as soon as she returned from personal leave, which should have been characterized and designated as protected time off under the Family Medical Leave Act.

35. Defendant Mortensen terminated Plaintiff on August 3, 2017, on two short weeks after Plaintiff's return from leave on July 18, 2017, and two and a half short weeks after Defendant Mortensen placed Plaintiff on a performance improvement plan.

36. Defendant Mortensen was made aware of Plaintiff's disability when he started his employment at Mennonite Home.

37. Despite Defendant Mortensen's knowledge of Plaintiff's disability he acted to punish Plaintiff for taking leave by placing her on a performance improvement plan.

38. Despite Defendant Mortensen's knowledge of Plaintiff's disability he acted to punish Plaintiff for taking leave by terminating Plaintiff.

39. Defendant Blessing is the Vice President of Human Resources and

Organizational Development for Mennonite Home and has filled that position since 2016.

40.    Defendant Blessing served as Mennonite Home Director of Human Resources from 2011 to 2016.

41.    Given Defendant Blessing's extensive supervisor and director level of experience, she knew or should have known that his conduct was in violation of the FMLA.

42.    Defendant Blessing knew or should have known that the Plaintiff's absences from work were for FMLA-qualifying reason, yet it punished her for those absences by placing her on a performance improvement plan related to attendance.

43.    Defendant Blessing knew or should have known that the Plaintiff's absences from work were for FMLA-qualifying reason, yet it punished her for those absences by terminating her.

44.    Defendant Blessing terminated Plaintiff on August 3, 2017, on two short weeks after Plaintiff's return from leave on July 18, 2017, and two and a half short weeks after Defendant Blessing placed Plaintiff on a performance improvement plan.

45.    Defendant Blessing was the employer who was in the best position to designate Plaintiff's leave as protected time off under the FMLA as she has been made intimately aware of Plaintiff's disability since December 2016.

## ADDITIONAL FACTUAL ALLEGATIONS

46.   Mennonite Home employs 50 or more employees for each working day during each of 20 or more calendar weeks in the current or preceding calendar year.

47.   At all times relevant to this Complaint, Defendants Blessing and Mortensen acted directly or indirectly as s supervisor of Plaintiff Kissinger, in the interest of Defendant Mennonite Home.

48.   At all times relevant to this Complaint, Defendants Blessing and Mortensen were responsible in whole or in part for violating Plaintiff Kissinger's rights and protections under the Family Medical Leave Act, while acting on behalf of Defendant Mennonite Home interests.

49.   Defendant Mennonite Home hired Plaintiff Kissinger  on July 17, 2000.

50.   Defendant Mennonite Home employed Plaintiff Kissinger for at least 12 months before she tried to exercise her right to FMLA.

### DEFENDANT HIRES AND PROMOTES PLAINTIFF BEFORE SHE DISCLOSES MAJOR HEALTH CONDITION AND DISABILITY

51.   Defendant hired Plaintiff as a fulltime employee with the title of Dining Service Supervisor on July 17, 2000.

52.   On or about 2010, Defendant promoted Plaintiff to Director of Dining Services.

53.   Plaintiff was a salaried employee.

54.   Plaintiff regularly worked flexible hours to meet the needs of the workplace.

55.   Plaintiff regularly communicated with her staff to meet the needs of her employees.

56.   Plaintiff would regularly respond to questions from staff, whether she was on site or off site.

57.   None of Plaintiff's subordinates complained about not being able to reach Plaintiff when she was working for Defendant.

### KISSINGER  EXPERIENCES SERIOUS HEALTH CONDITION THAT LIMIT SEVERAL MAJOR LIFE ACTIVITIES

58.   Plaintiff Kissinger told John Sauder, her then supervisor that she suffered from depression and anxiety on or about August 2016.

59.   Plaintiff Kissinger met with John Sauder on a bi-weekly basis on Thursdays and discussed her supervision of Dining Services.

60.   Plaintiff and John Sauder also discussed Plaintiff's depression and anxiety on a regular basis.

61.   During this time Plaintiff did not request any extended time off during this time.

62.   During the period that John Sauder supervised Plaintiff, there were no restrictions on her time.

63.   During the period that John Sauder supervised Plaintiff, Plaintiff regularly flexed her hours and would merely notify her staff that she was out of the building.

64.    During the period that John Sauder supervised Plaintiff, John Sauder never informed Plaintiff that this practice as a problem for Mennonite Home or her staff.

65.    In December 2016, John Sauder was promoted to replace the outgoing President Nelson Kling.

66.    In December 2016, Kimberly Blessing took over temporary supervision of Plaintiff Blessing.

67.    Defendant Blessing was aware Plaintiff Kissinger  was suffering with depression and anxiety.

68.    As early as December 2016, Plaintiff Kissinger told Defendant Blessing that she as taking medication for the depression and anxiety.

69.    Plaintiff Kissinger told Defendant Blessing that she was taking medication to address the symptoms of her mental health condition.

70.    Plaintiff met with Defendant Blessing only once a month, which usually fell on the fourth Thursday of each month.

71.    In March 23, 2017 Plaintiff Kissinger gave Defendant Blessing a list of her medications.

72.    A week later, Blessing told Plaintiff she checked with her father, a pharmacist, and he informed her, Plaintiff had a lot of medication changes at one time.

73.    Plaintiff informed Defendant Blessing that she was following doctor's orders.

74.    Plaintiff Kissinger was able to continue to perform the essential functions of her job.

75.    Plaintiff Kissinger flexed her time as a salaried employee, to attend doctor's visits until July 2017.

76.    On June 5, 2017, Plaintiff called via telephone and spoke with Defendant Blessing at 7:30 a.m. and she stated that she had something personal going on with one of her children and told Defendant Blessing, "I don't know if I need to take FMLA, I don't know what to do. This is too much.  I need to take leave. Now with everything that's been going on I just need to take leave."  Defendant Blessing stated, "Don't worry I will put you on personal leave." She never explained the options Plaintiff had or her rights under federal law.

77.    Defendant Blessing never objected to the scheduled doctor's meetings until July 2017.

78.    Defendant Blessing never required Plaintiff Kissinger to report back as to when she returned to the worksite until July 2017.

79.    Plaintiff knew Defendant Mennonite Home only provided 30 days of personal leave.

80.     Plaintiff called Defendant Blessing on the phone in early July 2017 as the 30-day deadline approached.

81.     After several phone calls Defendant Blessing gave Plaintiff permission to stay off campus and off the job until Tuesday July 18, 2017.

### KISSINGER  REQUESTS AN ACCOMMODATION OF TAKING TIME OFF WORK TO ADDRESS HER MENTAL HEALTH CONDITION

82.     On or about June 5, 2017 Plaintiff Kissinger called Defendant Blessing to inform her of a need for leave related to family members and Plaintiff Kissinger's chronic mental health condition.

83.     Plaintiff Kissinger asked Defendant Blessing if she should take FMLA.

84.     Defendant Blessing declined to grant Plaintiff Blessing her requested FMLA leave and instead placed her on "personal leave."

85.     Plaintiff Kissinger left work with plans to return later in the summer.

86.     Plaintiff Kissinger returned to work on July 18, 2017.

### DEFENDANTS RETALIATE AND DISCRIMINATE AGAINST PLAINTIFF KISSINGER

87.     Defendant's policy required a three-step progressive discipline process - 1st a verbal warning, 2nd a written warning, 3rd termination.

88.     Immediately upon returning Defendants Blessing and Mortensen placed Plaintiff Kissinger on a Performance Improvement Plan ("PIP").

89.     Defendant never gave Plaintiff a verbal warning or a written warning before

placing her on the PIP.

90.     Six items were listed on the PIP, including informing Mennonite Home of the EAP sessions with her therapist

91.     The alleged rationale for the PIP was assist Plaintiff in updating her on the activities of her department.

92.     The PIP also required Plaintiff Kissinger to attend the Defendant's Employee Assistance Program.

93.     The Defendants advised Plaintiff that they would receive a record of Plaintiff's attendance at the Employee Assistance Program.

94.     The PIP was to be in effect for six months.

95.     Plaintiff was told to be physically present in the worksite from 8:00 to 4:30 and to seek Defendant Mortensen's approval if her schedule varied from 8:00-4:30 schedule.

96.     Before going on leave and before informing Defendant Blessing that Plaintiff has a mental health condition, Plaintiff's schedule varied and she was not required to report her physical hours at the workplace.

### PLAINTIFF WAS TREATED LESS FAVORABLY THAN OTHER DIRECTORS WHO DID NOT HAVE MENTAL HEALTH DISABILITIES

97.     Other salaried employees, with titles of director, were not placed on Performance Improvement Plans and were not required to report variations from their daily schedule.

98.   Shaun Metzler, the Director of Dining Services for Independent Living, was not required to report hours of physical attendance at the workplace.

99.   Shaun Metzler was not placed on a performance improvement plan.

100.   Shaun Metzler did not have a disability that he disclosed to Defendant.

101.   Shaun Metzler did not request a leave from work related to a serious health condition.

102.   Leslie Groff, the Director of Facilities, was not required to report hours of physical attendance at the workplace.

103.   Leslie Groff was not placed on a performance improvement plan.

104.   Leslie Groff did not have a disability that she disclosed to Defendant.

105.   Leslie Groff did not request a leave from work related to a serious health condition.

106.   Kathy Markward, the Director of Community Life was not required to report hours of physical attendance at the workplace.

107.   Kathy Markward was not placed on a performance improvement plan.

108.   Kathy Markward did not have a disability that she disclosed to Defendant.

109.   Kathy Markward did not request a leave from work related to a serious health condition or as an accommodation for a disability.

**PLAINTIFF ARRIVES LATE BECAUSE HER OFFICE IS NOT READY AND CALLS OFF BECAUSE OF HER MENTAL HEALTH DISABILITY**

110.   On July 31, 2017, Plaintiff Kissinger came into work late because of prior arrangements related to moving furniture in her office.

111.   Plaintiff Kissinger received emails about Benjamin Roberts not being able to complete her office installation before she was scheduled to arrive at work.

112.   Plaintiff came to work as soon as her office was scheduled to be available.

113.   Plaintiff worked a full day after arriving at work by 10:00 a.m.

114.   Prior to informing Defendant that she had a disability, this type of late arrive would not have resulted in any adverse employment action.

115.   On August 2, 2017, Kissinger called Defendant Blessing and left a message that she was experiencing a side effect from the medication for her disability.

116.   Plaintiff Kissinger called off work because of issues related to her disability.

**DEFENDANT TERMINATES PLAINTIFF BECAUSE OF HER MENTAL HEALTH DISABILITY AND IN RETALIATION FOR HER TIME OFF REQUESTS**

117.   Defendant Mennonite Home terminated Plaintiff on August 3, 2017.

118.   Defendant Mennonite Home acted by and through Defendants Blessing and Mortensen.

119.   Defendant Mennonite Home gave as the rationale for termination that Plaintiff did not call in and inform the Defendant of her absences on July 31, 2017 and August 2, 2017.

120.   Defendant Mennonite Home characterized Plaintiff's call offs as "no-call/no-shows."

121.   Defendant Mennonite Home accused Plaintiff of violating the Performance Improvement Plan signed on July 18, 2017 by Plaintiff.

122.   Defendant Mennonite Home terminated Plaintiff Kissinger on August 3, 2017.

123.   The alleged reason for the termination was Plaintiff's failure to show up for work on two days without notifying Mennonite Home.

124.   On July 31, 2017, Plaintiff worked nine and a half hours .

125.   On August 2, 2017 Plaintiff suffered an unexpected side effect to a new mediation and was unable to attend work.

126.   Plaintiff was a loyal eighteen-year employee of Defendant Mennonite Home.

127.   Plaintiff had not received any prior disciplinary action.

128.   Defendant Mennonite Home terminated Plaintiff through their agents, Defendants Mortensen, and Blessing, because of Plaintiff's disability.

129.   Defendant violated Plaintiff rights under the Family Medical Leave Act and the American's with Disabilities Act when Defendant terminated Plaintiff.

**JURY DEMAND**

**CAUSES OF ACTION**

**COUNT I**
**RETALIATION FOR USE OF THE FAMILY MEDICAL LEAVE (FMLA)**
**29 U.S.C. § 2601, ET SEQ**
**KISSINGER V. KIMBERLY BLESSING**

130.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

131.   Kissinger  had a serious health condition that permitted her to take protected time off under the Family Medical Leave Act.

132.   Defendant Blessing retaliated Against Plaintiff by placing Plaintiff on a Performance Improvement Plan because of her request for protected time off under the Family Medical Leave Act.

133.   Defendant Blessing retaliated Against Plaintiff by terminating  Plaintiff because of her request for protected time off under the Family Medical Leave Act.

**COUNT II**
**RETALIATION FOR USE OF THE FAMILY MEDICAL LEAVE (FMLA)**
**29 U.S.C. § 2601, ET SEQ**
**KISSINGER V. DAN MORTENSEN**

134.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

135.   Kissinger  had a serious health condition that permitted her to take protected time off under the Family Medical Leave Act.

136.   Defendant Mortensen retaliated Against Plaintiff by placing Plaintiff on a Performance Improvement Plan because of her request for protected time off under the Family Medical Leave Act.

137.   Defendant Mortensen retaliated Against Plaintiff by terminating Plaintiff because of her request for protected time off under the Family Medical Leave Act.

### COUNT  III
### RETALIATION FOR USE OF THE FAMILY MEDICAL
### LEAVE (FMLA)
### 29 U.S.C. §  2601, ET SEQ
### KISSINGER V. MENNONITE HOME

138.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

139.   Kissinger  had a serious health condition that permitted her to take protected time off under the Family Medical Leave Act.

140.   Defendant Mennonite Home retaliated Against Plaintiff by placing Plaintiff on a Performance Improvement Plan because of her request for protected time off under the Family Medical Leave Act.

141.   Defendant Mennonite Home retaliated Against Plaintiff by terminating Plaintiff because of her request for protected time off under the Family Medical Leave Act.

## COUNT IV
## WILLFUL VIOLATION OF THE FAMILY MEDICAL LEAVE (FMLA)
### 29 U.S.C. § 2601, ET SEQ
### KISSINGER V. MENNONITE HOME

142.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

143.   Kissinger had a serious health condition that permitted her to take protected time off under the Family Medical Leave Act.

144.   Defendant interfered with Plaintiff Kissinger's rights under the FMLA by not characterizing and granting her rights to protected time off under the Family Medical Leave Act.

145.   Defendant Mennonite Home knew, or should have known, through its agents, Kimberly Blessing and Dan Mortensen, that the actions they took to interfere with Plaintiff's rights under the Family Medical Leave Action were in violation of the FMLA.

## COUNT V
## WILLFUL VIOLATION OF THE FAMILY MEDICAL LEAVE (FMLA)
### 29 U.S.C. § 2601, ET SEQ
### KISSINGER V. DAN MORTENSEN

146.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

147.   Kissinger had a serious health condition that permitted her to take protected time off under the Family Medical Leave Act.

148.   Defendant retaliated against Plaintiff Kissinger's under the FMLA by placing her on a Performance Improvement Plan and terminating her.

149.   Defendant Mortensen knew, or should have known, that the actions he took to retaliate against Plaintiff's for her trying to exercise her rights under the Family Medical Leave Action were in violation of the FMLA.

### COUNT VI
### WILLFUL VIOLATION OF THE FAMILY MEDICAL LEAVE (FMLA)
### 29 U.S.C. § 2601, ET SEQ
### KISSINGER V. KIMBERLY BLESSING

150.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

151.   Kissinger had a serious health condition that permitted her to take protected time off under the Family Medical Leave Act.

152.   Defendant retaliated against Plaintiff Kissinger's under the FMLA by placing her on a Performance Improvement Plan and terminating her.

153.   Defendant Blessing knew, or should have known, that the actions he took to retaliate against Plaintiff's for her trying to exercise her rights under the Family Medical Leave Action were in violation of the FMLA.

### COUNT VII
### DISCRIMINATION BECAUSE OF PLAINTIFF IS DISABLED UNDER THE AMERICANS
### WITH DISABILITIES ACT (ADA)
### 42 U.S.C. § 12101 ET SEQ.
### KISSINGER V. MENNONITE HOME

154.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

155.   Plaintiff is disabled person for the purposes of the Americans with Disabilities Act.

156.   Plaintiff is qualified to perform the essential functions of her job, with or without an accommodation.

157.   Plaintiff requested an accommodation of time off to address the issues related to her disability and the circumstances exacerbating her condition.

158.   Defendant retaliated and discriminated against Plaintiff by placing her on a Performance Improvement Plan and by terminating her.

159.   Defendant violated the Americans with Disabilities Act when they acted adversely towards her.

<u>**COUNT VIII**</u>
**RETALIATION FOR REQUESTING AN ACCOMMODATION UNDER THE AMERICANS WITH DISABILITIES ACT (ADA)**
**42 U.S.C. § 12101 *ET SEQ.***
**KISSINGER V. MENNONITE HOME**

160.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

161.   Plaintiff is disabled person for the purposes of the Americans with Disabilities Act.

162.   Plaintiff is qualified to perform the essential functions of her job, with or

without an accommodation.

163.   Plaintiff requested an accommodation of time off to address the issues related to her disability and the circumstances exacerbating her condition.

164.   Defendant retaliated and discriminated against Plaintiff by placing her on a Performance Improvement Plan and by terminating her.

165.   Defendant violated the Americans with Disabilities Act when they acted adversely towards her.

### COUNT IX
### DISCRIMINATION BECAUSE OF PLAINTIFF IS DISABLED UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT
43 P.S. §951 *et seq.*
### KISSINGER V. MENNONITE HOME

166.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

167.   Plaintiff is disabled person for the purposes of the Americans with Disabilities Act.

168.   Plaintiff is qualified to perform the essential functions of her job, with or without an accommodation.

169.   Plaintiff requested an accommodation of time off to address the issues related to her disability and the circumstances exacerbating her condition.

170.   Defendant retaliated and discriminated against Plaintiff by placing her on a Performance Improvement Plan and by terminating her.

171.   Defendant violated the Pennsylvania Human Relations Act when they acted adversely towards her.

**COUNT X**
**RETALIATION FOR REQUESTING AN ACCOMMODATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT**
43 P.S. §951 *et seq.*
**KISSINGER V. MENNONITE HOME**

172.   The preceding paragraphs are incorporated by reference as if set forth in their entirety.

173.   Plaintiff is disabled person for the purposes of the Americans with Disabilities Act.

174.   Plaintiff is qualified to perform the essential functions of her job, with or without an accommodation.

175.   Plaintiff requested an accommodation of time off to address the issues related to her disability and the circumstances exacerbating her condition.

176.   Defendant retaliated and discriminated against Plaintiff by placing her on a Performance Improvement Plan and by terminating her.

177.   Defendant violated the Americans with Disabilities Act when they acted adversely towards her.

**WHEREFORE**, Plaintiff respectfully prays for judgment against **All Defendants as follows:**

a.     For a declaratory judgment that Defendant's actions complained of herein violate the FMLA, ADA and the PHRA;

b.     For injunctive and equitable relief prohibiting Defendant from engaging in discriminatory practices;

c.     For a money judgment including monetary damages, including back pay and benefits and front pay and benefits;

d.     For a money judgment including monetary damages for compensatory damages for the violations of the FMLA, ADA and the PHRA;

e.     For a money judgment including punitive damages for violations of the ADA;

f.     For pre-judgment interest;

g.     For reasonable attorneys' fees, expert witness fees, and the costs and expenses of this litigation; and

h.     For such other legal and equitable relief as the Court may deem just and proper.

**⬚ TRIQUETRA LAW ®**
Respectfully submitted,

Dated: June 22, 2020

Sharon R. Lopez
PA ID 70605
35 East Orange Street, Suite 301
Lancaster, PA  17602
(717)  299-6300 (Telephone)
(717)  299-6338 (Fax)
Lopez@TriquetraLaw.com