### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOBETH KISSINGER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THE MENNONITE HOME,** | : | |
| **d/b/a MENNONITE HOME** | : | |
| **COMMUNITIES, et al.,** | : | **No. 20-3000** |
| **Defendants.** | : | |

### MEMORANDUM

**Schiller, J.**                                          **February 28, 2022**

Presently before the Court is Plaintiff JoBeth Kissinger's Motion to Amend the Judgment for an Award to Offset Negative Tax Consequences (Pl.'s Mot. to Amend J.) and Motion for Attorney Fees, Costs, and Prejudgment Interest (Pl.'s Fee Pet.). For the reasons that follow, Kissinger's Motion to Amend the Judgment is granted and Kissinger's Fee Petition is granted in part and denied in part. Specifically, Kissinger will be awarded an additional sum in the amount of $80,421.00 to offset the negative tax consequences of her front pay and back pay awards. Kissinger will also be awarded $250,972.00 in attorneys' fees, $19,596.32 in costs, and $6,295.07 in prejudgment interest, a total of $276,863.39 in fees, costs, and interest.

### I.    BACKGROUND

Kissinger's motions arise out of an employment dispute between Kissinger and Defendants Mennonite Home Communities ("Mennonite Home"), Kimberly Blessing, and Dan Mortensen. On June 22, 2020, Kissinger asserted ten causes of action against Defendants: a Family and Medical Leave Act ("FMLA") interference claim against Mennonite Home; five FMLA retaliation claims against Mennonite Home, Blessing, and Mortensen; an Americans with Disabilities Act ("ADA") discrimination claim against Mennonite Home; an ADA retaliation claim against

Mennonite Home; a Pennsylvania Human Relations Act ("PHRA") discrimination claim against Mennonite Home; and a PHRA retaliation claim against Mennonite Home.

On November 17, 2021, this Court decided in Kissinger's favor on her FMLA interference, ADA discrimination, and PHRA discrimination claims against Mennonite Home, including by finding that Mennonite Home willfully interfered with Kissinger's rights under the FMLA. The Court entered judgment in the amount of $812,036.00 for Kissinger against Mennonite Home as follows: $296,514.00 in back pay, $296,514.00 in liquidated damages, and $219,008.00 in front pay.[1]

## II.   DISCUSSION

### A.  Offsetting Negative Tax Consequences

On December 15, 2021, Kissinger moved the Court to amend its judgment pursuant to Fed. R. Civ. P. 59(e) to incorporate an additional sum to offset the negative tax consequences of her lump sum front pay and back pay awards. She requests an additional $80,421.00 based on calculations performed by economic expert Andrew Verzilli. (Pl.'s Mot. to Amend J. Ex B.)

A district court may, in its discretion, "award a prevailing employee an additional sum of money to compensate for the increased tax burden" a lump sum award may generate. *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 441-42 (3d Cir. 2009). "Without this type of equitable relief in appropriate cases, it would not be possible to restore the employee to the economic status quo that would exist but for the employer's conduct." *Id.* at 442 (citing *In re Continental Airlines*, 125 F.3d 120, 135 (3d Cir. 1997)). The burden is on the employee to "show the extent of the injury they

---

[1] The Court notes that all postjudgment briefing filed by Defendants was filed by Mennonite Home, Blessing, and Mortensen, collectively, despite the Court only finding against Mennonite Home. The Court will address only Mennonite Home—and not Blessing, Mortensen, or Defendants collectively—in this opinion, since it is responsible for Kissinger's awards.

have suffered," and the district court "should grant relief in light of the circumstances peculiar to the case." *Id.* at 443.

The Court will award this additional sum in order to make Kissinger whole given the equities of this case. Notably, before being terminated by Mennonite Home, Kissinger owned a home and had accumulated a robust 401(k) account for retirement; after her termination, she was forced to drain her 401(k) account and she ultimately foreclosed on her home. *Kissinger v. Mennonite Home*, Civ. A. No. 20-3000, 2021 WL 5356801, at *8 (E.D. Pa. Nov. 17, 2021). Her termination launched a sequence of dominoes that ravaged her financial circumstances, and she should not be perversely penalized for tax purposes because this Court found in her favor.

Moreover, although the Third Circuit has not explicitly ruled on this issue, the Court finds it appropriate to incorporate Kissinger's front pay award in calculating this additional sum, as other courts in this Circuit have done. *See Andujar v. Gen. Nutrition Corp.*, Civ. A. No. 14-7696, 2018 WL 3999569, at *10 (D.N.J. Aug. 20, 2018) ("It makes logical sense that if the purpose of a[n] . . . award is to compensate plaintiff for moving into a higher tax bracket, the amount of plaintiff's future pay award should be considered. After all, the award will be taken into account in computing plaintiff's tax bracket."); *O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp. 2d 443, 447 (E.D. Pa. 2000) ("Compliance with this goal requires reimbursement for the reduced amount of front pay money that the plaintiff has to invest as a result of higher taxes, as well as reimbursement for the higher taxes he must pay on his back wages caused by getting this money in a lump sum."). Mennonite Home also misreads *Perez*. Despite a typo, it is clear that the court there—citing to *Eshelman*—awarded an additional sum to compensate for negative tax consequences in connection with a front pay award. *Perez v. Lloyd Indus., Inc.*, Civ. A. No. 16-1079, 2019 WL 3765657, at *9

(E.D. Pa. Aug. 9, 2019) (in section wholly devoted to discussing plaintiff's "front pay damages," awarding sum "inclusive of . . . tax gross up").

Mennonite Home maintains that Verzilli's calculations are "speculative and unreliable," but disappointingly has failed to provide the Court with any counter calculations. For example, it asserts that Verzilli should not have "utiliz[ed] a single tax year to estimate the tax impact," but does not tell the Court why 2022 should not have been used, or which year should have been used instead. (Defendants' Opposition to Plaintiff's Motion to Alter or Amend Judgment [Defs.' Opp. to Pl.'s Mot. to Amend J.] at 5.) Mennonite Home avers that Verzilli should not have used the standard deduction in his calculations because "Kissinger had historically itemized her deductions," but—despite noting in the prior sentence that Kissinger's tax returns are "readily available" as exhibits—it does not cite to the record in support of this proposition. (*Id.*) And, indeed, Kissinger has used the standard deduction in recent years. (*See* Pl.'s Trial Ex. 14.) It urges the Court to "consider the presumed benefits obtained during the years after [Kissinger's] termination," but does not say how this should happen or expand upon this thought at all, copying and pasting this suggested "consideration" directly from a case in which the plaintiff's requested sum was declined after he apparently self-calculated his requested award. (Defs.' Opp. to Pl.'s Mot. to Amend J. at 6 (citing *Moffitt v. Tunkhannock Area Sch. Dist.*, Civ. A. No. 13-1519, 2017 WL 319154, at *21 (M.D. Pa. Jan. 20, 2017).)

In cherry picking excerpts from the case law without meaningfully scrutinizing these surface-level statements or applying them to the case at hand, Mennonite Home has thus done away with its opportunity to concretely inform this Court what should be done in connection with the tax consequences of Kissinger's front pay and back pay awards (beyond, of course, urging the Court to not to grant any additional award, without at all contemplating the equities underpinning

such potential award). Meanwhile, on the opposite side of the table sits Verzilli, who has served as an expert witness in numerous Third Circuit cases regarding offsetting negative tax consequences, including *Eshelman*. He remains exceedingly credible. In fact, the court in *Moffitt*— one of the cases Mennonite Home cites in support of its opposition of an award—specifically praised the detailed nature of Verzilli's *Eshelman* calculations. *See Moffitt*, 2017 WL 319154, at *22. And Verzilli's affidavit stated that he "[f]ollowed the guidelines set forth in . . . *Eshelman*" here. (Pl.'s Mot. to Amend J. Ex. B.)

At the end of the day, it is within the Court's "broad equitable powers" and "wide discretion" to fashion remedies to make victims of discrimination whole. *Eshelman*, 554 F.3d at 441-42. Kissinger's $515,522.00 lump front pay and back pay awards will considerably elevate her tax bracket. Lest Mennonite Home forgets, Kissinger's new higher tax rate is directly related to its conduct: had Kissinger received her Mennonite Home pay in 2022—which would have been, as stipulated by the parties, a salary of $84,422.00—she would have belonged to a lower tax bracket, but, instead, she faced discrimination on the part of Mennonite Home and was terminated. Awarding her the difference allows her to be made whole given all that she lost in the wake of her termination. Accordingly, the Court will award Kissinger an additional $80,421.00 based on Verzilli's calculations.

## B. Prejudgment Attorneys' Fees

The FMLA entitles a prevailing party to "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). The ADA also provides for an award of "reasonable attorney fees, including litigation expenses, and costs" to the prevailing party. 42 U.S.C. § 12205. The PHRA contains a similar provision. 43 P.S. 962(c.2). The parties do not dispute that Kissinger is the "prevailing party."

A court traditionally begins its calculation of reasonable fees by determining the "lodestar," "which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The party seeking fees bears the burden of proving that her request is reasonable by submitting evidence supporting the hours worked and the rates claimed by her attorneys. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The adverse party then has the burden of challenging the reasonableness of the requested fee, though "[t]he district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" *Id.* (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)). Once a party raises objections to a fee request, the court has significant discretion to adjust the fee award in light of those objections. *Id.*

The court must exclude hours that are excessive, redundant, or inadequately documented in the fee petition. *Id.* After these assessments, adjustments, and exclusions, the resulting lodestar is presumed to yield a reasonable fee. *Washington v. Phila. Cnty. Ct. Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

### 1.    *Kissinger's Submissions*

Counsel for Kissinger submitted her Fee Petition on December 20, 2021. In it, both Kissinger's attorneys—Sharon López and Andrea Farney—requested that the Court use an hourly rate of $400.00 in its lodestar based on the Community Legal Services of Philadelphia ("CLS Philadelphia") attorney fee schedule. *Attorney Fees - Range of Hourly Rates*, CLS Philadelphia, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited February 25, 2022). López said that she spent 419.04 hours on this matter, amounting to $167,626.80 in fees. (*Id.* at 4.) López also requested $1,700.00 for work stemming from an initial assessment fee and flat fee. (*Id.* at 5.) Farney said that she spent 193.80 hours on this matter, amounting to $77,520.00

in fees. (*Id.* at 4.) López and Farney also requested $5,664.00 in fees for work performed by legal assistant Alan Gross, who spent 14.16 hours on this matter at a requested rate of $160.00 per hour.[2] (*Id.*) López and Farney's initial request totaled $250,810.80 in fees.

On January 26, 2022, in view of objections raised by Mennonite Home and in accordance with this Court's January 19, 2022 Order, Kissinger's counsel filed a reply brief containing revised fee requests. (*See* Plaintiff's Revised Reply Brief in Support of Plaintiff's Motion for Attorney Fees and Costs & Prejudgment Interest [Pl.'s Revised Reply re Fee Pet.]; ECF No. 56.) There, López said that she spent 410.5 hours on this matter, amounting to $162,695.00 in fees. (*Id.* at 58, 60.) Farney said that she spent 192.8 hours on this matter, amounting to $76,545.50 in fees. (*Id.*) López and Farney also requested $1,600.00 in fees for work performed by Gross, accounting for 10.0 hours spent on this matter at a requested rate of $160.00 per hour. (*Id.*) This revised request totaled $240,840.50 in fees.

### 2.    *Hourly Rate*

López and Farney argue that the CLS Philadelphia fee schedule should "determine[] the appropriate hourly rates to calculate the Lodestar amount for all the legal work performed on this case." (Pl.'s Fee Pet. at 3.) They maintain that a $400.00 hourly rate, well within the CLS Philadelphia fee schedule's range for attorneys with 11-15 years of experience, should be used in calculating the lodestar. Mennonite Home, on the other hand, urges the Court to use López and Farney's customary hourly rates of $300.00 or $350.00 instead.[3]

---

[2] These figures are copied from Kissinger's Fee Petition verbatim, and the Court notes that it is not clear whether López and Gross' figures reflect minutes or tenths of an hour. For the sake of uniformity, the Court has converted all figures to tenths of an hour from this point forward.

[3] According to their reply brief, López and Farney each customarily charge $300.00 per hour for "non-court work" and $350.00 per hour for "court work." (Pl.'s Revised Reply re Fee Pet.

A reasonable hourly rate as used in a lodestar is generally calculated based on the prevailing market rates in the relevant community. *Washington*, 89 F.3d at 1035 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). The court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode*, 892 F.2d at 1183. The prevailing party "bears the burden of establishing by way of satisfactory evidence, in addition to the attorney's own affidavits, . . . that the requested hourly rates meet this standard." *Washington*, 89 F.3d at 1035. If the party fails to meet this burden, "the district court must exercise its discretion in fixing a reasonable hourly rate." *Id.* at 1036.

Except in two limited circumstances that do not apply here, courts in this Circuit look to the "forum rate rule" as guidance in determining the hourly rate to be used in the lodestar for out-of-town attorneys. The "forum rate rule" allows out-of-town attorneys "to claim the prevailing rate in the forum of the litigation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 704-05 (3d Cir. 2005). Here, the relevant "forum" for these purposes is Philadelphia, where trial proceedings took place.[4] *Id.*; *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, Civ. A. No. 07-585, 2014 WL 1321116, at *4 (M.D. Pa. Mar. 31, 2014) (finding that the relevant "forum" was

---

at 9.) They define "court work" as "hours spent beginning at the opening of trial, meaning when the courtroom is brought to order," including "any work on the case after hours in preparation for the next trial day," and ending "at the conclusion of the trial." (*Id.*) "Non-court work" constitutes "[a]ll other activities." (*Id.*)

[4] It is important to note that the entirety of this litigation took place during the height of the COVID-19 pandemic. This limits the Court's ability to determine where pre-trial activities related to this litigation took place, as other courts applying the "forum rate rule" have done, given that a significant amount of preparatory work took place remotely.

Scranton/Wilkes-Barre, where trial proceedings took place, even though counsel was located and practiced in Philadelphia and Pittsburgh).

Although Mennonite Home correctly points out that neither López nor Farney included their customary hourly rates in their opening Fee Petition, it nevertheless has devoted no space to challenging the propriety of López and Farney's requested hourly rate based on the CLS Philadelphia fee schedule. In particular, Mennonite Home does not provide any reason as to why Lancaster County or elsewhere would be a more appropriate forum than Philadelphia beyond continuously highlighting the omission of López and Farney's customary hourly rates. Even after López and Farney provided their customary hourly rates in their revised reply brief—citing to the "forum rate rule"—and the Court provided Mennonite Home with an opportunity to respond in its January 19, 2022 Order, Mennonite Home *still* did not do so, except to urge the Court to "assess [Plaintiff's] attorney's fees . . . with reference to Plaintiff's Counsel's recently disclosed customary fees" with nothing more. (Defendants' Response and Objections to Plaintiff's Revised Reply Brief [Defs.' Opp to Pl.'s Revised Reply] at 3.) For support, Mennonite Home merely cites several unreported and pre-*Interfaith* cases. This includes *Maldonado* in the latter camp, which notes that though "[t]he starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate . . . *this is not dispositive*." 256 F.3d 181, 184-85 (emphasis added).

Nor is the CLS Philadelphia fee schedule dispositive. *See Davis v. Riddle & Assocs., P.C.*, 579 F. Supp. 2d 692, 694 (E.D. Pa. 2008). But the CLS Philadelphia fee schedule "has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado*, 256 F.3d at 187. And López and Farney both have considerable skill and experience as employment and civil rights attorneys. López and Farney co-founded Triquetra Law more than

15 years ago, which exclusively represents plaintiffs in employment and civil rights litigation. (Pl.'s Fee Pet. Exs. A, E.) Prior to establishing Triquetra Law, both López and Farney worked for over a decade representing indigenous persons and victims of domestic violence. (*Id.*) Both have held leadership positions in the Lancaster and Pennsylvania Bar Associations, with López recently serving as president of the latter. (*Id.*) López and Farney have also been named Super Lawyers in the area of Plaintiff Employment Litigation for the past nine and six consecutive years, respectively. (*Id.*) And even with their multiple decades of experience, both López and Farney ask for compensation commensurate with the lower end of that incurred by attorneys with 11-15 years of experience, according to the CLS Philadelphia fee schedule. The reasonableness of López and Farney's hourly rate requests is supported by affidavits from two employment attorneys who regularly practice in several different regions in Pennsylvania and have attested to López and Farney's reputations as accomplished and well-respected attorneys. (Pl.'s Fee Pet. Exs. H, I.) They both also note the that the CLS Philadelphia fee schedule is regularly used to evaluate the rates of plaintiff-side employment attorneys practicing before this Court. (*Id.*)

The Court therefore finds that Lopez and Farney have met their burden in establishing, by way of satisfactory evidence, that their requested $400.00 hourly rate is reasonable and in accordance with the prevailing market rates for similarly experienced and talented counsel. *Blum*, 465 U.S. 895 n.11.

### 3.    *Hours Worked*

Mennonite Home has also raised several objections to certain hours worked by López and Farney and their corresponding time entries, requesting that they be excluded from the Court's lodestar calculations. A party seeking fees must describe with sufficient clarity and detail the hours devoted to various general activities over the course of the litigation to allow the court to determine

if the time spent was reasonable. *Rode*, 892 F.2d at 1190. Nevertheless, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney," and the party's descriptions need only "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Id.*

First, Mennonite Home identifies specific entries that it believes were not described with "sufficient specificity to determine what legal work was performed." (Defendants' Brief in Opposition to/and Objections to Plaintiff's Motion for Attorney's Fees and Pre-Judgment Interest [Defs.' Opp. to Pl.'s Fee Pet.] at 3.) The Court declines to exclude these hours because it finds that the entries provided by López and Farney are sufficiently specific such that the Court may determine whether the hours claimed are "unreasonable for the work performed," *Rode*, 892 F.2d at 1190, particularly given Kissinger's counsel's revisions made in the exhibits to their reply brief, (Pl.'s Revised Reply re Fee Pet. at 13-18.)

Second, Mennonite Home objects to numerous of López and Farney's entries because they describe clerical tasks. It is true that "[p]urely clerical work, such as copying and filing, is nonbillable." (Defs.' Opp. to Pl.'s Fee Pet. at 4.) And López and Farney appear to agree that some of the hours for which they initially billed are actually nonbillable, as they identified 2.6 hours of López's work and 0.4 hours of Farney's work in their reply brief that they conceded constituted clerical work. (*See* Pl.'s Revised Reply re Fee Pet. at 24-25.) They accordingly deducted these collective 3.0 hours from their total requested hours in in their reply brief. (*Id.* at 60.) Mennonite Home would like to take things further, though: it believes that López and Farney's hours should be subject to an additional, blanket "25%-35%" reduction to account for more clerical work apparently not reflected in López and Farney's timekeeping. (Defs.' Opp to Pl.'s Revised Reply

at 5.) The Court disagrees, especially given that Mennonite Home's counsel cites solely to "the experience of their own attorneys" and no case law or source to support their assertion that this type of generalized reduction would be appropriate. After the Court's own review of López and Farney's entries, it finds that the deductions made by López and Farney are all that are warranted.

Third, Mennonite Home objects to entries that it avers constitute paralegal-type work. The Supreme Court has noted that tasks typically performed by paralegals include "locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins*, 491 U.S. 274, 288 (1988). The Court acknowledges that López and Farney are the only attorneys at their firm, and that they faced deeply unfortunate staffing issues over the duration of this matter. The Court commends López and Farney for running—and winning—a successful litigation under these difficult circumstances. Nevertheless, as López and Farney ultimately conceded in their reply brief, tasks that can be delegated to a non-attorney should not be billed at an attorney's rate, even when the attorney is a solo practitioner or a part of a small firm, and some of the work López and Farney performed in connection with this matter is appropriately billable at a paralegal rate. *See Planned Parenthood v. Atty. Gen. of State of N.J.*, 297 F.3d 253, 266 (3d Cir. 2002). They identified 16.5 hours of López's work and 3.0 hours of Farney's work that involved paralegal-type tasks, and they modified their total requested hours accordingly in their reply brief. (*See* Pl.'s Revised Reply re Fee Pet. Exs. M, N.) The Court

has identified a further 9.3 hours of López's work[5] and 0.9 hours of Farney's work[6] that constitute paralegal-type work.

López and Farney maintain that their paralegal work should be billed at a $230.00 per hour rate. (Pl.'s Revised Reply re Fee Pet. at 19.) This rate reflects the upper band of the CLS Philadelphia fee schedule rate for Senior and Supervisory Paralegal services. *See* CLS Philadelphia, *supra*. Mennonite Home in turn requests that the Court award "no more than $155.00 per hour for all paralegal work performed by Attorneys and Farney." (Defs.' Opp. to Pl.'s Revised Reply at 4.) The Court finds that a $160.00 per hour rate, in alignment with both Mennonite Home's request and the CLS Philadelphia fee schedule for paralegals, is a reasonable hourly rate for the paralegal-type work performed by both López and Farney.

---

[5] *See* Pl.'s Revised Reply re Fee Pet. Ex. M at 2 (July 21, 2020; 1.0 hours; "Reviewing and revising Plaintiff's draft initial disclosures"), 3 (July 29, 2020; 0.5 hours; "Drafting initial disclosures"), 9 (Jan. 7, 2021; 0.4 hours; "Preparing notices of deposition for Blessing and Mortensen"), 14 (Feb 16, 2021; 0.2 hours; "Calling and emailing additional witnesses for statements"), 15 (Feb. 24, 2021; 1.0 hours; "Discussion with Priya Daye about providing a statement"), 17 ([Mar. 3, 2021; 0.3 hours; "Getting witness statement from Priya Daye"], [Mar. 4, 2021; 0.3 hours; "Reviewing disclosure to add Terry Ritchie Mason"], [Mar. 4, 2021; 0.8 hours; "Drafting Terry Ritchie Mason Statement"]), 18 ([Mar. 8, 2021; 1.0 hours; "Supplementing disclosures for opposing counsel], [Mar. 8, 2021; 0.2 hours; "Reviewing Anthony Kham's statement"], [Mar. 8, 2021; 0.5 hours; "Reviewing statement of Anthony Kham with declarant"], [Mar. 9, 2021; 0.5 hours; "Reviewing Terry Ritchey Mason Statement"]), 19 (Mar. 10, 2021; 1.0 hours; "Preparing supplemental disclosures for Defendant"), 20 (Mar. 12, 2021; 0.3 hours; "Amending disclosures"), 24 (Apr. 4, 2021; 0.6 hours; "Preparing supplemental disclosures of witness identities and expert reports for OPL pursuant to Plaintiff's ongoing obligation to supplement discovery"), 34 (Jul. 2, 2021; 0.7 hours; "Cataloging and organizing witness letters, phone numbers and statements for direct exam").

[6] *See* Pl.'s Revised Reply re Fee Pet. Ex. N at 6 (June 14, 2021; 0.3 hours; "Drafted Supplemental Expert Disclosure for Verzilli"), 13 (July 30, 2021; 0.6 hours; "Preparing Exhibits for Brief in Opposition to MIL").

The Court further finds that López and Farney's entries do not reflect duplicative, redundant, or excessive time spent on work, especially considering that they alone comprise the whole of their firm.

### 4.    *Gross's Work*

The Court agrees with Mennonite Home and finds that it does not owe Kissinger and her counsel funds related to Gross's services. Based on the time entries provided for Gross, his work is properly attributed to Triquetra Law's overhead. In fact, López and Farney agree that several of Gross's hours reflect "[n]on-compensable clerical work" and have removed, for example, 8.7 hours dedicated to "[p]repar[ing] Defendant's Exhibit List," 4.5 hours dedicated to "[p]rint[ing] and prepar[ing] trial exhibit books," and 2.8 hours dedicated to "[f]inishing up Trial notebooks" from their requests. (Pl.'s Revised Reply re Fee Pet. at 25.) It is unclear how those tasks differ in substance from the tasks described in Gross's two remaining entries for which López and Farney request compensation: 5.5 hours dedicated to "[p]reparing Joint Exhibit Binder" and 4.5 hours dedicating to "[p]retrial document preparation." (Pl.'s Revised Reply re Fee Pet. Ex. O.) Mennonite Home is therefore not responsible for compensating López and Farney for work performed by Gross.

### 5.    *Degree of Success*

Mennonite Home argues that the lodestar should be adjusted downward because the Court decided in Kissinger's favor on three of the ten claims she asserted in the Complaint, constituting what Mennonite Home views as only "partial success." (Defs.' Opp. to Pl.'s Fee Pet. at 14.) López and Farney, on the other hand, maintain they achieved "excellent results" warranting "a fully compensatory fee," *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), and urge the Court to "focus on the significance of the overall relief obtained" noting that, had Kissinger achieved success on

her other claims, the remedies she received "would not have been enhanced." (Pl.'s Fee Pet. at 15.) The Court agrees with López and Farney and will not adjust their fee award based on degree of success because, even if Kissinger had prevailed on more claims, the monetary damages awarded would have been the identical. *See Sheffer v. Experian Info. Sols., Inc.*, 290 F. Supp. 2d 538, 550 (E.D. Pa. 2003) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) ("In measuring the level of success a plaintiff has achieved, the district court may consider the amount of damages awarded compared to the amount of damages requested.").

### 6.   Total Prejudgment Fees

The Court accordingly awards $233,532.00 in fees related to López and Farney's prejudgment work as follows:

|                                          | Hours   | Rate    | Total        |
|------------------------------------------|---------|---------|--------------|
| López attorney work - prejudgment        | 381.7[7]| $400.00 | $152,680.00  |
| López paralegal work - prejudgment       | 25.8    | $160.00 | $4,128.00    |
| Farney attorney work - prejudgment       | 186.0[8]| $400.00 | $74,400.00   |

---

[7] López states that she spent 394.0 hours performing attorney work and 16.5 hours performing paralegal-type work prejudgment. (Pl.'s Revised Reply re Fee Pet. Ex. M.) The Court, after determining that 9.3 additional hours were spent performing paralegal-type work, has subtracted 9.3 hours from López's initial attorney hours and has added it to her paralegal hours, resulting in 394.0 - 9.3 = 384.7 attorney hours, and 16.5 + 9.3 = 25.8 paralegal hours. Further, as discussed *infra* Section II.D, the Court has deducted 3.0 hours from López's time in connection with travel to and from trial. 384.7 - 3.0 = 381.7 total attorney hours.

[8] Farney states that she spent 189.8 hours performing attorney work and 3.0 hours performing paralegal-type work prejudgment. (Pl.'s Revised Reply re Fee Pet. Ex. N.) The Court, after determining that 0.9 additional hours were spent performing paralegal-type work, has subtracted 0.9 hours from López's initial attorney hours and has added it to her paralegal hours, resulting in 189.8 - 0.9 = 188.9 attorney hours, and 3.0 + 0.9 = 3.9 paralegal hours. Further, as discussed *infra* Section II.D, the Court has deducted 2.9 hours from Farney's time in connection with travel to and from trial. 188.9 - 2.9 = 186.0 attorney hours.

| | | | |
|---|---|---|---|
| Farney paralegal work - prejudgment | 3.9 | $160.00 | $624.00 |
| Assessment fee | | | $200.00 |
| Flat fee | | | $1,500.00 |
| | | *Total prejudgment fees:* | **$233,532.00** |

### C. Prejudgment Interest

In the Third Circuit, "the purpose of an award of pre-judgment interest is to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment in entered" in order to "compensate for loss of the time value of money." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1103 (3d Cir. 1995). The determination of whether to award prejudgment interest on damages under the ADA and PHRA—and, correspondingly, the applicable prejudgment interest rate—is committed to the sound discretion of the district court. *Diaz v. Saucon Valley Manor, Inc.*, Civ. A. No. 12-0433, 2013 WL 4564300, at *2 (E.D. Pa. Aug. 27, 2013) (citing *Marra v. Phila. Hous. Auth.*, 404 F. Supp. 2d 839, 848 (E.D. Pa. 2005) and *Herman v. City of Allentown*, 985 F. Supp. 569, 581 (E.D. Pa. 1997)). In the event of a judgment in favor of a plaintiff, there is a strong presumption in favor of awarding prejudgment interest. *Booker v. Taylor Milk Co.*, 64 F.3d 860, 868 (3d Cir. 1995). The FMLA also mandates the award of such interest. *Diaz*, 2013 WL 4564300, at *2; 29 U.S.C. § 2617(a)(1)(A)(ii)-(iii).

Mennonite Home asserts that "any pre-judgment award should be no more than $6,295.07." (Defendants' Brief Re: Attorney's Fees and Pre-Judgment Interest [Defs.' Br. re Fees] at 10; Defs.' Br. re Fees Ex. A.) Kissinger has agreed to this figure. (Pl.'s Revised Reply re Fee Pet. at 7.) Finding Mennonite Home's calculations supporting this figure to be reasonable, the Court accordingly awards $6,295.07 in prejudgment interest.

### D.  Prejudgment Costs

López and Farney ask the Court to award $19,794.67 in costs related to their prejudgment work. (Pl.'s Revised Reply re Fee Pet. Ex. H.) Mennonite Home's objections to these requested costs can be sorted into two groups. The first group comprises objections to requested costs for which López and Farney purportedly crafted too-vague time entries or failed to produce corresponding invoices. López and Farney, however, provided both the appropriate revisions to these entries and invoices with their reply brief. (Pl.'s Revised Reply re Fee Pet. at 55-58; Pl.'s Revised Reply re Fee Pet. Ex. H.) The Court will therefore award López and Farney this group of costs.

The second group comprises objections to all travel-related costs requested by López and Farney, whether as related to them or Kissinger's witnesses. Mennonite Home points the Court to 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court and enumerating the costs that a prevailing party may recover. (Defs.' Opp. to Pl.'s Fee Pet. at 15.) Although § 1920 allows for the recovery of costs relating to the travel of witnesses, the Court agrees with Mennonite Home that López and Farney's travel costs to, from, and during trial are not taxable.[9] *See Interfaith*, 426 F.3d at 710 ("[U]nder normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel."); *see also Melissa G. v. Sch. Dist. of Phila.*, Civ. A. No. 06-5527, 2008 WL 160613, at *5 (E.D. Pa. Jan. 14, 2008) (quoting *Sheffer*, 290 F. Supp. 2d at 552) ("[W]ith regard to travel costs, 'courts in this district have historically rejected taxation of costs of

---

[9] Since López and Farney invoke *Interfaith* and claim that they are out-of-town attorneys in support of their requested $400.00 hourly fee in line with the Philadelphia market, then it follows that they are considered as out-of-town attorneys for these purposes as well.

this nature.'"). The Court will therefore deduct $898.35[10] from López and Farney's requested costs and will award $18,896.32 in prejudgment costs. The Court has also deducted 3.0 hours and 2.9 hours from López[11] and Farney's[12] requested attorneys' fees, respectively, to reflect travel-related entries recorded there instead of with their requested costs.

### E. Final Prejudgment Fee and Cost Award

The Court therefore calculates the total amount of prejudgment fees, costs, and interest to be awarded to Kissinger and her counsel as follows:

|  | Hours | Rate | Total |
|---|---|---|---|
| López attorney work - prejudgment | 381.7 | $400.00 | $152,680.00 |
| López paralegal work - prejudgment | 25.8 | $160.00 | $4,128.00 |
| Farney attorney work - prejudgment | 186.0 | $400.00 | $74,400.00 |
| Farney paralegal work - prejudgment | 3.9 | $160.00 | $624.00 |
| Assessment fee | | | $200.00 |
| Flat fee | | | $1,500.00 |
| | | *Total prejudgment fees:* | $233,532.00 |
| Prejudgment interest | | | $6,295.07 |
| Costs - prejudgment | | | $18,896.32 |

---

[10] *See* Pl.'s Revised Reply re Fee Pet. Ex. H at 3 (Aug. 4, 2021; $579.51; "Hotel Room for 8/2 and 8/3 for Plaintiff's Trial Lawyers"), 4 (Aug. 5, 2021; $318.84; "Hotel Room for 8/4 for Plaintiff's Lawyers").

[11] *See* Pl.'s Revised Reply re Fee Pet. Ex. M at 41 ([Aug. 2, 2021; 1.5 hours; "Travel to Philly for trial"], [Aug. 5, 2021; 1.5 hours; "Travel from Philly to Lancaster"]).

[12] *See* Pl.'s Revised Reply re Fee Pet. Ex. N at 14 (Aug. 2, 2021; 1.4 hours; "Travel to Philly from Lancaster and preparing take exhibits to courthouse"), 15 (Aug. 5, 2021; 1.5 hours; "Travel from Philly to Lancaster – packing up court files and exhibits to return to office").

*Total prejudgment award:*   **$258,723.39**

### F.  Postjudgment Award

López and Farney have also requested fees and costs in connection with work performed postjudgment. (Pl.'s Revised Reply re Fee Pet. Exs. P, Q.) López says that she spent 40.3 hours on this matter postjudgment. (Pl.'s Revised Reply re Fee Pet. Ex. P.) Farney says that she spent 14.7 hours on this matter postjudgment. (Pl.'s Revised Reply re Fee Pet. Ex. Q.) They also request $700 in connection with costs for postjudgment work performed by Verzilli. (Pl.'s Revised Reply re Fee Pet. Ex. L.)

Compensation for postjudgment work is warranted because the Court specifically ordered additional briefing in relation to the award of attorneys' fees and costs. Mennonite Home also has not specifically objected to López and Farney's requested postjudgment fees, including those incurred in connection with Kissinger's Motion to Amend the Judgment for an Award to Offset Negative Consequences. However, the Court, in its discretion, will reduce the amount of fees requested related to work performed on Kissinger's reply briefing regarding her fee petition by 50% because, as the Court stated in its January 19, 2022 Order, the reply brief was "unworkable" as initially filed, requiring the revision and re-filing of the brief.[13] (ECF No. 56.) The Court will

---

[13] López dedicated 20.5 hours to the fee petition reply brief. The Court will reduce Kissinger's fee award in relation to this work from $8,200.00 to $4,100.00. *See* Pl.'s Revised Reply re Fee Pet. Ex. P at 3 ([Jan. 12, 2022; 8.5 hours; "Drafting Reply Brief for Attorney Fee Petition], [Jan. 13, 2022; 4.0 hours; "Continuing to draft and research issues re Atty Fee Reply Brief"], [Jan. 14, 2022; 2.0 hours; "Continuing to draft Atty Fee Reply Brief"], [Jan. 15, 2022; 2.0 hours; "Continuing to draft Atty Fee Reply Brief"], [Jan. 15, 2022; 2.0. hours; "Revising Atty Fee Reply Brief"], [Jan. 17, 2022; 2.0 hours; "Final Editing of Atty Fee Reply Brief"].)

Farney dedicated 2.3 hours to the fee petition reply brief. The Court will reduce Kissinger's fee award in relation to this work from $920.00 to $460.00. *See* Pl.'s Revised Reply re Fee Pet. Ex. Q at 3 ([Jan. 15, 2022; 0.4 hours; "Drafting motion for permission to file reply brief and exceed

therefore award $17,440.00 in postjudgment fees and $700.00 in postjudgment costs, for a total of $18,140.

|  | Hours | Rate | Total |
|---|---|---|---|
| López attorney work – postjudgment | 19.8 | $400.00 | $7,920.00 |
| López fee petition reply work | 10.25 | $400.00 | $4,100.00 |
| Farney work – postjudgment | 12.4 | $400.00 | $4,960.00 |
| Farney fee petition reply work | 1.15 | $400.00 | $460.00 |
| | | *Total postjudgment fees:* | $17,440.00 |
| Costs – postjudgment | | | $700.00 |
| | | *Total postjudgment award:* | **$18,140.00** |

### G. Total Award

The Court hereby awards Kissinger a total of $276,822.72 in attorneys' fees, costs, and prejudgment interest.

| | |
|---|---|
| Prejudgment fees | $233,532.00 |
| Postjudgment fees | $17,440.00 |
| *Total fees:* | **$250,972.00** |
| Prejudgment costs | $18,896.32 |
| Postjudgment costs | $700.00 |
| *Total costs:* | **$19,596.32** |
| Prejudgment interest | $6,295.07 |
| Total award | **$276,863.39** |

---

pages"], [Jan. 15, 2022; 1.6 hours; "Editing Reply Brief for Atty Fees"], [Jan. 16, 2022; 0.3 hours; "Drafting Supplemental Declaration of López for Fee Reply"].)

III.    **CONCLUSION**

For the foregoing reasons, the Court grants Kissinger's Motion to Amend the Judgment and will award an additional sum in the amount of $80,421.00 to offset the negative tax consequences of Kissinger's front pay and back pay awards. The Court also grants in part Kissinger's Motion for Attorney Fees, Costs, and Prejudgment Interest and awards a total of $276,863.39 in fees, costs, and interest. An Order consistent with this Memorandum will be docketed separately.